UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| ALVIN HARVEY | CIVIL ACTION NO. 09-cv-0384 |
| VERSUS | JUDGE HICKS |
| JAMES LEBLANC, ET AL | MAGISTRATE JUDGE HORNSBY |

**REPORT AND RECOMMENDATION**

**Introduction**

Alvin Harvey ("Plaintiff") is a former Shreveport policeman who was convicted of murdering his wife and sentenced to life in prison. See Harvey v. Wade Correctional Center, 98-cv-2012 (W.D. La.) (addressing 50 claims for habeas relief in a 246-page petition, supported by a 549-page memorandum and a 241-page reply brief). He is currently housed at the David Wade Correctional Center ("DWCC"). He filed this civil rights action against the physician and nurses at DWCC, as well as the Warden and the Secretary of the Department of Corrections. Plaintiff complains that he has not received adequate medical care for his hypertension.

Before the court is a Motion for Summary Judgment (Doc. 24) filed by the several Defendants. They argue that Plaintiff failed to exhaust his administrative remedies before filing suit and that the claims lack merit. Plaintiff has filed an opposition (Doc. 31) to the motion, as well as several motions that request the appointment of counsel, the appointment of a medical expert, the scheduling of video depositions, and the like. See Docs. 32, 33, 34,

35, 36, and 38. For the reasons that follow, it is recommended that Defendants' motion for summary judgment be granted and that Plaintiff's motions be denied.

**The Constitution and Inmate Medical Care**

For a convicted prisoner or pretrial detainee to prevail on a claim that his medical care (or lack of care) violated the Constitution, he must prove that prison or jail officials were "deliberately indifferent" to his "serious medical needs." Estelle v. Gamble, 97 S.Ct. 285, 291 (1976); Hare v. City of Corinth, 74 F.3d 633, 643 (5th Cir. 1996) (en banc). Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind. Estelle, 97 S.Ct. at 291-92. Disagreement with the diagnostic measures or methods of treatment afforded by prison officials does not state a constitutional claim for indifference to medical needs. Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997).

**Summary Judgment Standard**

Under Fed.R.Civ.P. 56(c), a summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." A fact is "material" if it might affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510 (1986). An issue is "genuine" if there is sufficient evidence so that a reasonable jury could return a verdict for

either party. Anderson, supra; B & A Pipeline Co. v. Dorney, 904 F.2d 996, 1002 (5th Cir. 1990).

The party seeking summary judgment has the initial responsibility of informing the court of the basis for its motion, and identifying those parts of the record that it believes demonstrate the absence of genuine issue of material fact. Celotex Corp. v. Catrett, 106 S.Ct. 2548 (1986). If the moving party carries his initial burden, the burden then falls upon the nonmoving party to demonstrate the existence of a genuine issue of a material fact. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S.Ct. 1348, 1355-56 (1986). The party opposing the motion may point to the same materials filed by the movant to satisfy his burden, but "only evidence -- not argument, not facts in the complaint -- will satisfy" the burden. Solo Serv Corp. v. Westowne Associates, 929 F.2d 160, 164 (5th Cir. 1991). Unsworn pleadings and memoranda are not competent summary judgment evidence. Larry v. White, 929 F.2d 206, 211 n. 12 (5th Cir. 1991).

**Summary of Plaintiff's Allegations**

Plaintiff alleges in his complaint that he suffers from "stroke level" high blood pressure because of inadequate medical care from prison officials. Plaintiff complains that he was originally prescribed the drug Procardia until Secretary Leblanc ordered that it be discontinued in favor of the drug Varapamil. Plaintiff alleges that he was on the replacement drug for about two months, during which time his blood pressure was constantly at or above stroke levels. Plaintiff concedes that Dr. Hearn, the DWCC physician, later put him back on

Procardia, but Plaintiff contends that he suffers lingering side effects from being on Varapamil for two months.

Plaintiff also complains that he has not received additional blood pressure checks during early morning hours as he has requested, that DWCC has not provided him a CT scan as he requests, that prison officials are conducting illegal medical/drug trials on non-consenting prisoners, that a nurse has discriminated against him based on his race, and that the discontinuance of the 8:00 p.m. pill call has resulted in early morning headaches and high blood pressure for him. Plaintiff seeks injunctive relief by which the court would direct various aspects of Plaintiff's medical care and re-institute the 8:00 p.m. pill call.

**The Exhaustion Defense**

A prisoner may not bring an action with respect to prisoner conditions, including medical care, until he has exhausted such administrative remedies as are available. 42 U.S.C. § 1997e(a); Harris v. Hegmann, 198 F.3d 153 (5th Cir. 1999).

The summary judgment evidence shows that Plaintiff has filed 173 requests for administrative remedy since he has been incarcerated at DWCC. A Department regulation provides that if an inmate has filed multiple requests, the requests will be handled in the order received, but only one request will be processed at a time. If a second request is received while the first is in process, the second request will be "backlogged" until the completion of the first request. This ensures that one inmate does not jam the system with grievances so that other inmates will not have a fair opportunity to receive a timely

administrative response. Plaintiff currently has 34 requests on backlog status, including one directed at issues related to the claims he presents in this complaint.

Plaintiff later filed another grievance directed at the issues presented in this complaint, but that grievance was rejected because of the pending and backlogged grievance that was already filed on the same subject. Plaintiff attempts to use that second rejected grievance as a basis for proper exhaustion that allows him to bring this suit. Defendants have squarely attacked that contention and raised the exhaustion defense in their motion for summary judgment. The defense is potentially meritorious, but the court chooses to address the complaint on the merits in an effort to end this dispute once and for all.

**Defendants' Summary Judgment Evidence**

Defendants submit the affidavit of Dr. Pam Hearn, who has served as the medical director at DWCC for more than 20 years. Dr. Hearn testifies that Plaintiff has been under her care and supervision for his chronic high blood pressure and other medical complaints since April 1994.

Dr. Hearn testifies that she is a member of the Formulary Committee, which regularly evaluates and prescribes the preferred pharmaceutical or treatment choices for medical care of state inmates throughout the Department of Corrections. In about February 2008, the Committee decided to change the preferred calcium channel blocker medication for the treatment of high blood pressure from Procardia to Varapamil. The decision was made for reasons including (1) some studies showed Varapamil more effective in treating high blood

pressure, (2) compliance of the medication could be more easily monitored because Varapamil also decreases the heart rate, and (3) the availability of generic forms.

Dr. Hearn testifies that at the time of the change, 3,299 state inmates were being prescribed channel blockers, with Procardia being the preferred form. Of that number, 173 were housed at DWCC. Plaintiff's medication was changed in August 2008 from Procardia to Varapamil. To monitor the change, Plaintiff's blood pressure was ordered to be checked two times a week (Tuesday and Friday) for two weeks. That order was later changed to monitor three times a week for two weeks, and the order continued until August 29, 2008. Checks of Plaintiff's blood pressure and pulse rates during that time indicated that Plaintiff may not have been compliant with the Varapamil, to which Plaintiff claims he is allergic. Dr. Hearn testifies that Plaintiff is not allergic to the drug and did not exhibit any allergic reactions.

Dr. Hearn returned Plaintiff to Procardia on September 4, 2008. His blood pressure continued to be a chronic problem, and she increased the dosage of both Procardia and Catapres (another blood pressure medication used in conjunction with a calcium channel blocker). Dr. Hearn says there are no contraindications for the use of Catapres with either Procardia or Varapamil.

Dr. Hearn directly denies Plaintiff's allegation that only African-American inmates were taken off of Procardia. She states that all inmates, regardless of race, were removed from Procardia because of the consensus of medical opinion that Varapamil was a better drug

choice. At DWCC, where 173 inmates were changed from Procardia to Varapamil, all but Plaintiff and seven other inmates successfully made the transfer. Those eight inmates (two white and six African-American) were returned to Procardia. (This information is also supported by an affidavit of Brittany Griffin, which was filed under seal to protect the medical privacy of the other inmates).

Dr. Hearn testifies that Plaintiff has repeatedly complained to medical staff that he has suffered a series of minor strokes. To assess the complaint, Plaintiff was admitted to the infirmary from May 29 to June 1, 2009. The assessment was unremarkable and showed no indications of stroke history. Dr. Hearn testifies that a CT scan is not medically indicated because there are no neurological deficits. She says that assessments for possible strokes have also been made at each of Plaintiff's many sick calls and medical examinations, but there has never been any clinical evidence that Plaintiff may have suffered even a minor stroke.

Dr. Hearn also directly addresses Plaintiff's claim that his blood pressure has remained uncontrolled because of the elimination of the 8:00 p.m. pill call. She testifies that she made the decision to eliminate the 8:00 p.m. pill call at DWCC for several medically sound reasons, including encouraging compliance with medications. She testifies that the fewer times a patient must take prescription drugs, the more compliant the patient generally is. Exceptions are made for the distribution of medications in the evening when medically necessitated. No exception was warranted for Plaintiff, Dr. Hearn says, because Plaintiff

only takes Procardia one time a day, so the elimination of the late pill call has no effect on his medical treatment.

Dr. Hearn also flatly denies Plaintiff's bold claim that he has been the subject of drug trials. A DOC policy prohibits inmate participation in any medical experiments, and Dr. Hearn says no such experimentation ever took place while she has been employed at DWCC. Secretary Leblanc testifies by affidavit that he does not recall any personal contact or communication with Plaintiff, but he does know that DOC policy prohibits drug trials. He also flatly denies Plaintiff's allegation that he ordered the discontinuance of any effective medical treatment for black inmates. Dr. Hearn further testifies that Plaintiff's blood pressure has been routinely monitored and adjustments to his medication have been made when medically warranted. Plaintiff's medical records also support this testimony about the frequency and extent of care he received.

**Analysis**

Defendants' submissions that squarely challenged Plaintiff's allegations shifted the burden to Plaintiff to create a genuine issue of material fact. Plaintiff may no longer rely on the mere allegations of his complaint. He must come forward with specific, competent summary judgment evidence that would allow a reasonable juror to rule in his favor on a claim.

Plaintiff has submitted various copies of his grievances and several copies of his requests for medical treatment. He has also submitted a declaration under penalty of perjury,

which may constitute summary judgment evidence. Hart v. Hairston, 343 F.3d 762 n.1 (5th Cir. 2003). His unsworn memorandum, however, is not competent summary judgment evidence. Larry v. White, 929 F.2d 206, 211 n. 12 (5th Cir. 1991).

Plaintiff states in his declaration that Defendants have falsely asserted that he is trying to dictate the type of medical care he receives. He argues that none of the requests that he has made are considered medically inappropriate for treating hypertension. Plaintiff also states that he suffered elevated blood pressure and severe headaches and numbness when he was on Varapamil. He faults two nurses because they allegedly "failed to follow proper medical care protocol" for treating his hypertension. Plaintiff continues to maintain that a CT scan would determine the severity of damage he alleges has been done to him because of hypertension. He states that he continues to seek reinstatement of the 8:00 p.m. pill call because giving him larger doses at the pill calls at 6:00 a.m., 10:45 a.m., and 3:45 p.m. is not sufficient to control his blood pressure during a 24-hour period. Plaintiff states that his blood pressure elevates during the morning hours and causes him to suffer headaches.

The record shows that Plaintiff has received constant medical attention from a physician and nurses for his hypertension. His blood pressure has been monitored frequently, at all hours of the day and night. Plaintiff was, like every other prisoner receiving Procardia, changed to Varapamil for sound medical reasons. There is absolutely no competent evidence to support Plaintiff's bold and conclusory assertion that only black inmates were subject to the change in medications or that he was the subject of some form of medical experiment.

Plaintiff was carefully monitored after the change in medication. Once there was an indication that the medication was not as successful as Procardia, the physician reversed the change and returned Plaintiff to his preferred medication.

There is nothing in the summary judgment evidence to indicate deliberate indifference, which encompasses unnecessary and wanton infliction of pain repugnant to the conscience of mankind. Rather, this is a classic case where an inmate disagrees with the methods of treatment afforded by prison officials, and such disputes do not state a constitutional claim for indifference to medical needs that would violate the Eighth Amendment's ban on cruel and unusual punishment. See, e.g., Norton v. Dimazana, 122 F.3d 286 (5th Cir.1997) (claim based on constant but unsuccessful treatment of serious prolapsed rectum condition dismissed as frivolous); Stewart v. Murphy, 174 F.3d 530 (5th Cir.1999) (summary judgment in favor of defendants upheld where medical staff rendered treatment for fatal bed sores but staff had failed to discover condition early, did not follow up on orders, did not follow prior recommendations, and did not read nurses' notes).

The CT scan and other matters requested by Plaintiff may be reasonable forms of treatment, but that does not allow Plaintiff to have the court order his physicians to afford such treatment. The issue is not whether Plaintiff received the treatment he felt he needed, but rather what treatment was medically necessary at the time. Woodall v. Foti, 648 F.2d 268, 272 (5th Cir. 1981) ("the essential test is one of medical necessity and not one simply

of desirability"). There is no specific evidence that a CRT scan or other treatment no being provided is medically necessary.

Plaintiff has not explained how the elimination of the 8:00 p.m. pill call causes him headaches when Dr. Hearn testifies that Plaintiff is given Procardia only one time of day. Thus, the reinstatement of the 8:00 p.m. pill call would not change Plaintiff's Procardia schedule. Plaintiff is entitled to make an emergency request for medical service if he suffers a problem during the night, and the records show that Plaintiff has not been shy about making such requests.

Plaintiff has received frequent and routine medical treatment for his hypertension. He was briefly prescribed a drug that all other state inmates in his position received. When the drug did not work as effectively as hoped, a physician prescribed the drug that Plaintiff desired. Plaintiff has demonstrated no indications of stroke or other lingering effects of the brief change in medication.

Plaintiff requests the appointment of counsel and a medical expert to further examine his healthcare and conduct detailed discovery on what days his blood pressure exceeded certain levels. There are no extraordinary circumstances to justify the granting of such relief. The federal court does not micro-manage the day-to-day drug prescription practices and other healthcare decisions for state inmates, particularly when the inmates are under the constant care of a licensed physician, nurses, and other professionals. Plaintiff may obtain relief from the court only when there is a deliberate indifference to a serious medical need which triggers

the Eighth Amendment's ban on cruel and unusual punishment. This case does not present facts that even begin to approach that demanding standard.

Accordingly;

**IT IS RECOMMENDED** that Defendant's Motion for Summary Judgment (Doc. 24) be **granted** and that all claims against all Defendants be **dismissed with prejudice**.

**IT IS FURTHER RECOMMENDED** that Plaintiff's motions for appointment of counsel, appointment of a medical expert, to take video depositions, and for other various forms of relief (Docs. 32, 33, 34, 35, 36, and 38) be **denied**.

**Objections**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within seven (7) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to

proposed factual findings and legal conclusions accepted by the district court. See <u>Douglass v. U.S.A.A.</u>, 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 5th day of February, 2010.

MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE